Case 20.

Ord. Pet.

## Neal, &c., vs. Elliott.

### APPEAL FROM PULASKI CIRCUIT.

1. If a slave be loaned and held by the loanee for more than five years, without record evidence of the loan, a purchaser will acquire a valid title by purchase from the loanee, or the slave may be subjected to the debts of the loanee.

2. But when the possession of the loanee has been less than five years, the purchaser will acquire no title, and the time which the purchaser holds after his purchase cannot be added to the time which the loanee held under the loan, to constitute a bar by five years possession.

3. The possession of the loanee, before the lapse of five years, is but the possession of the loanor, and not adverse to his title.

4. A co plaintiff is liable for costs though he may have sold his interest in the subject in litigation, and therefore an incompetent witness for plaintiff.

Chief Justice WHEAT did not sit in this case.

[The facts of the case are stated in the opinion of the court. REP.]

*Brown & Whitaker*, for appellant—

1. The instructions of the court, given to the jury at the instance of the defendant, were erroneous, and particularly the second. That instruction is hypothecated upon a state of fact which the evidence does not conduce to prove, to-wit, that the slave in contest was loaned by James Neal to Cope, his son-in-law, and daughter, upon her marriage, which was 1845, whereas the proof is clear and uncontradicted that Cope did not get possession of the slave until the summer of 1847. Such an instruction was calculated, and doubtless did, mislead the jury.

But can the statute of frauds be made to apply to a case like this, since the act of 1846, for the protection of the rights of married women? This question has not yet been decided by this court, so far as we are informed.

What possession is it that the statute denounces as fraudulent, and calculated to deceive creditor and purchasers? Certainly the possession of one who is

capable of making contracts, having creditors, and of selling his property—a married woman is not such a person. Mrs. Cope was not such a person when the sale was made to Elliott, the appellee. The possession of the slave was held under a loan of the slave made to Mrs. Cope in 1847. It was in her possession, not that of the husband; he had no power or legal right to dispose of it.

2. The instruction of the court supposes that the possession of Cope, under the loan from his father-in-law, Neal, may be added to the possession of Elliott to complete the term of five years, and thereby constitute a bar to Neal's recovery. Such is not the proper construction of the statute of frauds in regard to loans not recorded. The possession must have remained with the loanee the full term of five years before a purchaser from such loanee will be protected, or a creditor can subject the property to the satisfaction of the debts of the loanee. And if he then purchase, knowing of the loan, he will hold for the benefit of the lender. (See *Davidson's Exor. vs. Nunnally*, 3 *B. Monroe*, 535; *Shacklet vs. Kershna*, 1 *Littell* 29; *Fightmaster vs. Beasley*, 7 *J. J. Marshall*, 412; *Merrill vs. Lewis*, 2 *Dana*, 162; *Penny vs. Davis*, 3 *B. Monroe*, 313.

3. The first instruction is also erroneous, as given for appellee. The court, in that instruction, tell the jury "that if Cope and wife, and their *vendees*, held the ' uninterrupted possession of the slave for five years 'next before the commencement of this action, claim-'ing said slave as their own during all that time, ' that they should find for the defendant." This instruction is not the law of the case. We suppose the court intended to say to the jury that there was a possession, other than an adverse possession, which in five years, would confer a good title. We do not so understand the law; and there is not a shadow of testimony that ever Cope and wife claimed to hold adversely to Neal until Cope sold the negro to Elliott; then, for the first time, did Neal have any suspicion

that Cope was disposed to treat the negro as his property. This instruction was therefore erroneous, and calculated to mislead the jury.

4. Elliott's possession was no doubt adverse from the date of his purchase, but it was not long enough to bar Neal's recovery—not two years; and there cannot be a bar by limitation.

*A. J. James*, for appellee—

The demurrer and various instructions bring up two questions for decision.

1st. Under the statute of limitations can the adverse possession of a sub-purchaser be added to the possession of the original possessor, to make up the five years; or, to state it otherwise, can the person sued, and last in possession, avail himself of the adverse possession of his vendor, so as to make out the five years by adding the time of his vendors possession to that of his own?

2d. Under the statute against frauds and perjuries, can the vendee of the loanee add his own adverse possession to the time the slave was held by the loanee, so as by adding the two together to make out the five years?

Under the statute of limitations the question is, was there, an adverse holding for five years before suit. Under the statute of frauds, the question of whether there was a possession of five years, under an unrecorded loan. In either case the plaintiff would be barred of an action. Time is therefore material under both statutes, and would begin to run, no matter under which statute the holding was, whether adverse or as a loan. Therefore, the first proposition could not have been given, for the statute of frauds would run whether the holding was adverse or under an amicable loan.

The same error exists in the third proposition asked and refused although the statute of limitations could not run, yet the statute of frauds would, and to have given either of those instructions would have

been error, because it would have assumed, that possession under an unrecorded loan for even five years, without suit, would not protect creditors and purchasers, unless it was adverse, which could not be.

The 5th and 8th propositions asked by plaintiffs are so palpably erroneous as to require no notice. For whether the sale was conditional or unconditional from Cope to Elliott, he (Elliott,) was equally in the place of a purchaser, and these plaintiffs would have no right to avail themselves of it; that is a question wholly between Elliott and his vendor.

The second and tenth proposition do not embrace the exceptions in the law of limitation. "Absence" does not stop the statute when time begins to run, unless the party "removes," "absconds," "conceals himself," or resorts to "artifices to delay suit," time runs on. Temporary absence, when not a removal, &c., does not stay the statute of limitations; therefore, neither of these propositions could be given.

But there is still another objection, even the removal or absence are not made exceptions, which may be deducted in computing the time under an unrecorded loan; and this case having to be taken in both aspects, no instruction could be properly given upon the one view which would preclude the examination of the other.

The true construction of the statute of frauds will make a possession held under an unrecorded loan for five years, without claim by suit, protect purchasers even where their purchase was before five years, if their holding under purchase added to the loanee's holding makes the term complete.

If the purchase was made before the expiration of the five years from the loan, then the purchaser would necessarily hold, subject to the reclamation of the bailor, until the term of five years should be completed by the several holdings added together, and then the holding would enure to the benefit of the purchaser, and protect his title. The object is to

prevent frauds. If a loanee, holding under an unrecorded loan continuously for five years, might then sell and pass good title to the purchaser, for a much stronger reason, to prevent frauds, should the bailor be required to set up his claim by suit in a case where his bailee or loanee parts with the possession before the expiration of five years. The continuous holding under the loan should, after the lapse of five years from the loan, enure to the purchaser in possession under the statute of frauds. Wherefore the seventh instruction of plaintiffs was properly refused and the second instruction of defendant given.

The words of the statute are "where any loan of personal property is pretended to have been made to any person with whom, or those claiming under him, possession shall have remained for five years, without demand made, and pursued by due process of law on the part of the pretended lender, &c." * * "The absolute right shall be deemed to be with the possession in favor of a purchaser without notice, &c." (*Rev. St.* 364,)

Dec. 26, 1857.

Judge STITES delivered the opinion of the court.

The evidence conduces to show that the slave Harriet was, in 1847, loaned by James Neal to Cope and wife, who held her up to the sale to Elliott, in 1850, claiming her as their own property, and exercising acts of ownership over her as such; and that Elliott continued to hold her under his purchase until the commencement of this action, in March, 1855.

A number of instructions were asked for on both sides, and the circuit court gave those moved by the defendant, and refused several asked for by plaintiff. The jury having returned a verdict for the defendant, and a new trial being refused, the plaintiff has appealed.

The main grounds relied on for reversal are; 1st. Error in granting and refusing instructions; and, 2d. The exclusion of the testimony of Richard Neal.

No valid objection, it seems to us, exists to any of the defendants instructions except the second. The

others properly submit the law applicable to the facts, and relating to the questions to which they are directed; but the second, in our opinion is erroneous.

It is as follows: "That if the jury believe, from 'the evidence, that James Neal, the father of Mrs. 'Cope, loaned the slave to his daughter and son-in-'law on their marriage, and delivered the possession 'to Cope and wife, without any reservation in writ-'ing recorded, showing such loan, and that the pos-'session of said slave remained with Cope and wife, 'and others claiming under them, for the space of 'five years next after such loan and delivery of pos-'session without suit, that the title, so far as purchas-'ers and creditors are concerned, vested absolutely 'in Cope and wife, and they ought to find for the de-'fendant."

Now the only witness who speaks of the period: when Cope and wife were married, is Copon, who was introduced by the appellee. He says they were married about 1845; but neither he nor any other witness pretends to say that the slave in contest was loaned before 1847, when Cope was about to move from Shelby to Lancaster. The instruction assumes, hypothetically, that there was evidence tending to show a loan at the time of the marriage, and was in this regard abstract, and well calculated to mislead the jury to the prejudice of the defendant.

If, as assumed in the instruction, the loan was made in 1845, and Cope and wife held thereunder for five years next preceeding the sale to Elliott, and not adversely to Neal, such possession was sufficient under the Statute against frauds to protect Elliott as a purchaser, although it did not vest title in the loanees as between them and the lender. This would have brought the case clearly within the statute, and no doubt could have existed as to its operation. The instruction seems to have been framed so as to embody this view, but is hypothecated upon a state of fact not before the jury.

NEAL, &c.
vs.
ELLIOTT.

As the record now stands the possession certainly did not begin before 1847. None of the witnesses go behind that year. The question is then presented by the seventh instruction of appellant, (which was refused by the court,) whether less than five years possession in Cope and wife, as loanees, would avail Elliott as a defense under the statute? Or in other words, whether the possession of Cope and wife under the loan from 1847 to 1850, and Elliott's possession as purchaser from them, from 1850 to the beginning of this suit, being more than five years possession in the loanees and their vendee, but less than five years in either, is sufficient, under the statute of frauds, to divest the lender of his right against the purchaser?

We are not aware that this point has been directly settled by this court.

The act of 1796 (1 *Vol. Stat. Law*, 739) provides,

1. If a slave be loaned and held by the loanee for more than five years, without record evidence of the loan, a purchaser will acquire a valid title by purchase from the loanee, or the slave may be subjected to the debts of the loanee.

that "where any loan of goods and chattels shall be ' pretended to have been made to any person *with* ' *whom, or those claiming under him, possession shall have* ' *remained by the space of five years*, without demand ' made and pursued by due process at law on the part ' of the pretended lender; or where any reservation ' or limitation shall be pretended to have been made ' of an use or property by way of condition, rever- ' sion, remainder, or otherwise, in goods and chattels, ' the possession whereof shall have remained in anoth- ' er as aforesaid, the same shall be taken, as to the ' creditors and purchasers of the persons aforesaid *so* ' *remaining in possession*, to be fraudulent within this ' act, and that the absolute property is with the pos- ' session, unless such loan, reservation, or limitation ' of use or property were declared by will or deed, ' in writing, proved and recorded as aforesaid."

In *Shacklett vs. Kershner*, 1st *Littell*, 227, where the appellant claimed title to a slave through a purchase made at a sale under an execution against one Mc-Gee, who had been in possession under a loan for three or four years, and where the question was,

whether such holding was fraudulent within the act, this court say, "If McGee had remained possessed ' under the loan for five years it is conceded, as the 'loan was not recorded, that it would, by the statute ' of this country, as matter of law, be fraudulent and ' void as to McGee's creditors, and purchasers under ' him. But McGee was not possessed for five years; ' and it is only where the loanee remains possessed ' for five years that the loan is declared fraudulent by ' the statute."

In *Fightmaster vs. Beasley*, 7 *J. J. Mar.* 412, the question was raised whether the statute, *supra*, applied where a slave was possessed for five years under a loan, and such possession partly in Virginia and partly in this State. It was held that the possession must be five years in Kentucky, and that the previous possession in Virginia could not be connected with that here, so as to make up the time required by the act.

In *Penny vs. Davis*, 3 *B. Mon.* 314, the point was raised whether a deed of trust from the lender, properly recorded, declaring his title, and appointing a trustee to hire out for the benefit of the *cestui que trust* a slave which had then been in the possession of the loanee near five years, took the case from within statute, notwithstanding the possession still continued with the loanee. It was held that such deed amounted to an actual resumption of title on the part of the lender, and relieved the case from the operation of the act.

All the cases in which the question is at all alluded to seem to recognize and adopt the idea that there must be five years possession in the loanee before the law will divest the owner of his right as to the creditors of the loanee or purchasers claiming under him. And this seems to comport not only with the letter, but the reason and policy of the act.

It was intended not for the benefit of parties or privies to such loans, nor to affect the title of the property so far as they are concerned, but for the protection of third persons who might be prejudiced by

NEAL, &c.
vs.
ELLIOTT.

2. But when the possession of the loanee has been less than five years the purchaser will acquire no title, and the time which the purchaser holds after his purchase cannot be added to the time which the loanee held under the loan, to constitute a bar by 5 years possession

the fraudulent combinations of such parties. It was designed to prevent the obtention, by the loanee, of a false and fictitious credit based upon the semblance of ownership of property resulting from the possession for the period named in the act, and to inhibit its real owners from contributing to such end. And furthermore to protect purchasers who might rely on such possession as evidence of title in the loanee.

But to avail himself of the protection of the act a party must show a case within its provisions.

Where he relies on a purchase from a loanee he must show that such loanee has had a possession sufficient to carry with it the absolute ownership of the property. If he buys before his vendor has had such possession then his attitude is no better than that of his vendor, and he cannot claim the protection of the act. The possession of the loanee, where it is short of five years, is the possession of the owner of the property, both as to the loanee and all others. Where it continues for five years without a proper registration of the loan, it then becomes fraudulent as to third persons—creditors of the loanee and purchasers from him, and those claiming under them—and carries with it the absolute property. But to divest the owner of title as to creditors and purchasers of the loanee, the possession under the loan must have continued for five years. The law permits him to lend his slave or other property for any time short of that period, without prejudice to his title, and a purchaser from the loanee, within the five years, cannot rely upon the prior possession of his vendor as fraudulent within the act. Nor will the law for the protection of such purchaser add the previous possession of the loanee to that of the purchaser in order to make out the time required by the act. The previous possession of the loanee is the possession of the lender. It is amicable and subordinate to his title, and continues his possession as to all the world until it reaches five years; and there would be as much propriety in making the possession of the owner himself avail for

the protection of a purchaser in such case, as to give that effect to the possession of his loanee where it has continued less than five years.

So that in this case if the jury should believe there was a loan of the slave to Cope and wife and that they held under such loan for a period less than five years before they sold to Elliott, then the statute of frauds has no application, and cannot avail Elliott as a purchaser from the loanee.

If, however, the holding of Cope and wife was in their own right and not as loanees, then such holding from the time it commenced, will inure to the benefit of the purchaser and may be computed with his own possession so as to constitute the five years adverse possession under the statute of limitations and thus protect him under its provisions.

We are of opinion therefore that the circuit court erred in giving the second instruction asked for by appellee, and in refusing the seventh asked for by appellant. No other substantial error to appellants prejudice is perceived, either in refusing instructions, or in excluding the deposition of Richard Neal. He was a co-plaintiff and liable for costs and the sale or transfer of his interest after the commencement of the suit did not exonerate him from such liability.

For the reasons stated the judgment is *reversed* and cause remanded for a new trial and other proceedings not inconsistent with this opinion.

